## GOTTSCHALK v. RAILWAY EXPRESS AGENCY, Inc.

No. 9355.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 20, 1948.

Decided Feb. 11, 1948.

Rehearing Denied March 17, 1948.

Walter R. Gottschalk, pro se.

Edward V. Ryan, Asst. U. S. Atty., of Newark, N. J., (Edgar H. Rossbach, of Newark, N. J., U. S. Atty., on the brief), for United States, amicus curiae.

Harry E. Walburg, of Newark, N. J., (Cox & Walburg, of Newark, N. J., on the brief), for appellee.

Before MARIS, GOODRICH, and O'CONNELL, Circuit Judges.

PER CURIAM.

It appears that the petitioner in this case was discharged by the respondent from his position as assistant agent at the respondent's Communipaw Avenue Terminal in Jersey City within one year after his restoration to the respondent's service following his release from active duty as a reserve officer in the army. He asserted in his petition to the district court that his discharge was without cause in violation of Section 3(c) of the Army Reserve and Retired Personnel Service Law of 1940, 50 U.S.C.A. Appendix, § 403(c), and he asked the court to order his restoration to the position from which he was discharged.

After hearing, the district court made full findings of fact and concluded that the respondent's discharge of the petitioner was with cause and that he was, therefore, not entitled to be restored to his position. Our examination of the evidence satisfies us that it supports the court's findings of fact. We are equally satisfied that the findings of fact compel the court's conclusion that the respondent had legal cause for its discharge of the petitioner and that he was not entitled under the statute to be restored to his position It follows that the petition was properly dismissed.

The order of the district court will be affirmed.

On Petition for Rehearing.

PER CURIAM.

The petitioner has applied for rehearing and strongly urges that the sole cause of his discharge was his activity as a lawyer, outside of his working hours as assistant agent for the respondent, in defending certain policemen of the City of Hoboken against oppressive measures taken against them by their superiors in the city government. This, he insists, was not just cause for dismissal within the meaning of Section 3(c) of the Army Reserve and Retired Personnel Service Law of 1940, 50 U.S.C.A. Appendix, § 403(c). We have accordingly reexamined his contentions.

If what the petitioner asserts were all there was to his case his contention would have much force. But there is more which we cannot ignore. The district court upon ample evidence, made the following findings of fact:

"8. Prior to April 11, 1946, one of the police officers being represented by the petitioner was Edward J. Sheehy, who was under suspension from the Police Department of the City of Hoboken for alleged willful disobedience of orders. On April 11, 1946, the petitioner accompanied Edward J. Sheehy to the Jersey City Terminal of the respondent where the petitioner sought out Joseph J. Schnell, the agent in charge of that terminal for respondent for

the purpose of obtaining a temporary position for Police Officer Sheehy.

"I find that Sheehy, at the solicitation of the petitioner, was employed by the agent Schnell as a temporary employee to perform the ordinary duties of an expressman in loading and unloading shipments of merchandise from and to railroad cars and trailers, and other work incidental thereto, and that the said Sheehy was generally familiar with that work having been employed by the respondent eight or nine years prior thereto.

"I find that the said Sheehy submitted to a physical examination by a physician employed by the respondent on April 11, 1946, and stated to said physician that he had not had any sicknesses during the past five years and that the said physician found that the said Sheehy was physically qualified to fill the position of platform man with the respondent.

"The said Sheehy began work on the night of April 11, 1946, and worked four nights for the said respondent and performed the regular work and in the same manner as performed by other employees engaged in the same line of work with him. At the end of the four days work the said Sheehy's employment was discontinued because of lack of work due to a strike of elevator operators in New York City.

"On May 13, 1946, Sheehy's trial for alleged willful disobedience of orders came on for hearing before the Deputy Director of the Department of Public Safety of the City of Hoboken and the said Sheehy was defended by the petitioner as his attorney. The said Sheehy set up as his defense in that trial that he did not willfully disobey any orders of his superiors and that he was physically unable to carry on the extra duty assigned to him in the Police Department because of illness. At his trial, when confronted with his employment beginning April 11, 1946, and continuing for four days at the respondent's place of business in Jersey City, he testified that he worked there only two and one-half days and that he was compelled to cease working because of his physical condition. He also testified that the position with the respondent had been obtained for him by the petitioner herein

and that arrangements had been made for him to do light work, and that during the course of his employment he was permitted to pick out the small packages to carry, weighing approximately two to three pounds. Petitioner herein has admitted that he obtained the position for the said Sheehy and contended that he arranged with the agent, Mr. Schnell, for the said Sheehy to receive light work. This was brought out by the petitioner on the examination of the said Sheehy at the said police trial.

"9. As a result of said trial reports of it were printed in the public press and the trial came to the attention of the executive officers of the respondent. An investigation was undertaken to determine whether or not its agent Schnell had hired the said Sheehy at the solicitation of the petitioner at regular wages to do light work, and as a result of the said investigation Mr. J. F. Ross, General Manager of the Eastern Department of respondent, correctly concluded that the said Sheehy was not hired to do light work, that he did do his regular work and that he was paid the regular wages for the said work, and that the statements of the said Sheehy that he received light work and was hired to do light work were false and that the statement of the said petitioner that he had arranged for the employment of said Sheehy to do light work was not true.

"10. On May 16, 1946, the petitioner was summoned and did appear before Mr. J. J. McDermott, one of his supervisors, who called his attention to the newspaper article which in effect set forth that the petitioner had obtained employment for the said Sheehy and that Sheehy had been engaged to do light work and did light work while working for the respondent. The petitioner was advised by the said supervisor, McDermott, that he would have to withdraw from his outside activities involving the defense of the police cases as his actions were harmful and detrimental to the interests of the respondent. On the same day, petitioner had a conference for about approximately two hours with Mr. J. F. Ross, General Manager of the Eastern Department of the respondent, and he advised the petitioner that his actions in becoming involved in a very controversial matter with the officials of the City of Hoboken were harmful to the in-

terests of the respondent, and that his action in the Sheehy case had brought on unfavorable publicity to the respondent and that it was harmful in that it led the officials of the City of Hoboken to believe that the respondent was providing a haven for a suspended police officer. He also informed the petitioner that the respondent had received a communication from the Deputy Police Chief of Hoboken to the effect that the respondent would not be permitted to park its vehicles so that they extended out more than sixteen feet into Observer Highway which was the location of the respondent's warehouse in Hoboken. He also stated to the petitioner that it was possible, although he had no way of proving it, that this letter resulted from the petitioner's activities and actions arising out of the defense of the various police officers. The General Manager Ross advised the petitioner that he would have to cease activities which were harmful and prejudicial to the interests of the respondent and in view of what had happened if petitioner continued in the defense of the police officers he would be discharged. Petitioner was given several days in which to make his decision and on May 19, 1946, petitioner wrote to said General Manager Ross:

" 'I must reserve my right to fight for the right.' At approximately midnight May 20, 1946, petitioner received a written notice of dismissal from the employ of respondent as an undesirable employee.

"11. I further find as a fact that no agreement was made by the petitioner with Mr. Schnell, the agent of the respondent at Jersey City, New Jersey, to engage the said Sheehy as an employee to perform light work, but that the agreement was that Sheehy should do the same work as other employees of the respondent engaged in similar work.

"12. I find as a fact that the acts and actions of the petitioner in engaging in controversial litigation with the municipal officials of the City of Hoboken, and the act of the petitioner in obtaining employment for the Police Officer Sheehy under the circumstances hereinbefore related, and the petitioner's statement at the trial of said Sheehy that he had explained to the man-

agement of the respondent that Sheehy was only able to do light duties, and the resultant publicity, was harmful and prejudicial to the business interests of the respondent and was a violation of the loyalty and duty owed by the petitioner to respondent as a supervisory employee."

Although most unfortunate from the petitioner's standpoint we think that the situation thus disclosed afforded just cause for the action taken by the respondent. The petitioner had placed himself in the position of having to serve two masters. On his own testimony he chose to use his position and influence with the respondent to benefit his private client Sheehy at the respondent's expense. This the respondent was not required to tolerate, particularly when the unfavorable publicity which resulted might well have a harmful effect on its relations with its other employees. The respondent was, therefore, entitled to insist, as it did, that the petitioner make his choice between its service and that of his private clients.

An order will be entered denying rehearing.